UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT



PETER A. MONTY, JR. and )
LYNNE M. MONTY, )
                                 )
    Appellants, )
                                 )
    v. )    Case No. 5:15-cv-97
                                 )
U.S. BANK, N.A., as Trustee for )
J.P. Morgan Mortgage Acquisition Trust )
2006-CW, MORTGAGE ELECTRONIC )
REGISTRATION SYSTEMS, INC., BANK )
OF AMERICA, N.A., and SELECT )
PORTFOLIO SERVICING, INC., )
                                 )
    Appellees. )

## OPINION AND ORDER
(Doc. 1)

    Debtors Peter A. Monty, Jr. and Lynne M. Monty appeal an April 16, 2015 Adversary Proceeding Order from the United States Bankruptcy Court for the District of Vermont granting summary judgment to U.S. Bank, N.A., as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-CW ("U.S. Bank"). The Montys contend that the Bankruptcy Court erred when it concluded that U.S. Bank has authority to enforce a promissory note against them. Defendants-Appellees maintain that the Bankruptcy Court's ruling should be affirmed as supported by the undisputed factual record and by the applicable law.

    The court heard oral argument on September 16, 2015. For the reasons stated below, the Bankruptcy Court's April 16, 2015 Order is AFFIRMED.

### Factual Background

    The Bankruptcy Court found the following facts to be undisputed for summary judgment purposes. (Doc. 2-21 at 4–5.) The Montys are the owners of real property in Hinesburg, Vermont. On April 11, 2006, seeking to refinance the loan on that property, the Montys executed an adjustable rate promissory note (the "Note") in the amount of $221,650 in favor of Countrywide Home Loans, Inc. ("Countrywide"). The Note is indorsed in blank by

Countrywide. No date appears next to the Note's blank indorsement. (*See id.* at 7.) Also on April 11, 2006, the Montys executed a mortgage (the "Mortgage") granting Mortgage Electronic Registration Systems (MERS), as nominee for Countrywide and its successors and assigns, a lien on the Montys' interest in the Hinesburg property to secure the Montys' obligations under the Note.

On March 1, 2006, prior to the date of the Montys' refinance, Countrywide executed a Master Mortgage Loan Purchase and Servicing Agreement. In that agreement, Countrywide sold to J.P. Morgan Acquisition Corp. all of Countrywide's right, title and interest, excluding servicing rights, in and to certain loans, including future loans. The agreement provides that after the sale of the loans is completed, a "collateral file" containing documents related to each loan, including the original mortgage note, will be delivered to the designated custodian.

On July 1, 2006, J.P. Morgan Acceptance Corp. I (as depositor), J.P. Morgan Acquisition Corp. (as seller), and U.S. Bank, N.A. (as Trustee), executed a Pooling and Servicing Agreement (the "PSA") establishing a mortgage loan trust called the J.P. Morgan Acquisition Trust 2006-CW2 (the "Trust"). Under the PSA, Countrywide was identified as the originator, and Countrywide Home Loans Servicing LP was designated as the servicer of the loans subject to the PSA. Also under the PSA, Wells Fargo Bank is the master servicer and securities administrator. The PSA provides that the Note is to be indorsed in blank or to U.S. Bank, as Trustee.

On April 17, 2006, the original indorsed Note was transferred to the custody of Bank of New York Mellon f/k/a JP Morgan Chase, as the document custodian for the Trust. On April 27, 2009, Countrywide Home Loans Servicing LP changed its name to BAC Home Loans Servicing, LP, and on July 1, 2011, BAC Home Loans Servicing, LP merged with and into Bank of America, N.A.

On December 30, 2011, the Montys filed a petition for relief under Chapter 13 of the Bankruptcy Code. As of that date, Bank of New York Mellon possessed the original collateral file containing the original Note indorsed in blank. On December 3, 2012, the proof of claim was filed on behalf of U.S. Bank, as Trustee for the Trust. A copy of the Note was attached to the proof of claim. Currently, Select Portfolio Servicing, Inc. ("SPS") is in possession of the original collateral file, including the original Note, as servicer for Trustee U.S. Bank.

## Procedural History

The Montys commenced the adversary proceeding in the Bankruptcy Court in February 2013, challenging the validity of U.S. Bank's proof of claim. (Doc. 2-2.) They argued that U.S. Bank lacked standing to enforce the mortgage debt because U.S. Bank was not the "holder" of the Note secured by the Mortgage.[1] In response, Defendants filed a motion for summary judgment, maintaining that there were no material facts in dispute and that U.S. Bank was entitled to judgment as a matter of law. (Doc. 2-11.) Defendants supported their motion with, among other things, an August 22, 2014 affidavit signed by a Document Control Officer for SPS. (*Id.* at 15–18.) The Montys opposed the motion (Doc. 2-12), Defendants filed a reply (Doc. 2-14), and the parties filed a joint pretrial statement (Doc. 2-13).

The Bankruptcy Court issued an Order making preliminary findings as to the scope of the issues. (Doc. 2-15.) Specifically, the Bankruptcy Court identified two issues for resolution of the Montys' "standing" claim: (1) whether the transferor was a "holder" entitled under the Vermont Uniform Commercial Code to enforce the Note on the date of the Montys' petition; and (2) whether U.S. Bank was entitled to enforce the Note on the date it filed a proof of claim. (*Id.* at 4.) The Bankruptcy Court invited the parties to supplement their filings to focus on those two issues. (*Id.*) Defendants subsequently filed a supplemental memorandum of law and supplemental statement of undisputed facts (Doc. 2-17 at 1–12), accompanied by a January 9, 2015 affidavit signed by Suzanne Johnstone (another Document Control Officer for SPS) (*id.* at 13–17), as well as several exhibits. The Montys filed a response, asserting that Ms. Johnstone's affidavit raised additional issues of material fact. (Doc. 2-18.) The parties also filed

---

[1] The Montys brought additional claims other than their "standing" claim, but the Bankruptcy Court granted Defendants' motion to dismiss those additional claims in an Order dated June 10, 2013. (*See* Docs. 2-6; 2-7.) The Montys have not appealed that Order, so the court addresses only the "standing" issue here. The court notes that the doctrine of "standing" is an imperfect fit for cases involving only private claims. Using the language of "standing" can create "conceptual confusions" in such cases and result in incorrect conclusions regarding a court's subject-matter jurisdiction, the availability of substitution to correct a real-party-in-interest defect, capacity, or intervention. *See* 13A Charles Alan Wright et al., *Federal Practice & Procedure* § 3531 (3d ed.). Nevertheless, the ability to enforce a note and mortgage is often labeled as a "standing" issue, so the court uses that term here in that limited sense.

3

additional supplemental memorandums. (Docs. 2-19; 2-20.) The Montys did not present any evidence in any of their filings opposing summary judgment.[2]

The Bankruptcy Court granted summary judgment to U.S. Bank in an Order dated April 16, 2015. (Doc. 2-21.) The Bankruptcy Court concluded that there were no disputes of material fact as to any of the issues bearing on U.S. Bank's ability to enforce the Note. (*Id.* at 6–9.) The Bankruptcy Court specifically concluded that any dispute over whether the Montys' loan was transferred pursuant to the March 1, 2006 PSA was not material because the Defendant's manner of obtaining possession of the Note is not material, so long as the Defendant had possession of the indorsed Note as of the petition date. (*Id.* at 6.) This appeal followed.

## Analysis

### I. Standard of Review

Under 28 U.S.C. § 158(a)(1), "district courts . . . have jurisdiction to hear appeals . . . from final judgments, orders, and decrees" of bankruptcy courts. "Under Federal Rule of Civil Procedure 56, applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, a court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *In re Kran*, 760 F.3d 206, 209 (2d Cir. 2014). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)). The district court "review[s] the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*." *Id.* (alteration in original) (quoting *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006)).

### II. Standard for Establishing the Right to Enforce the Note

On appeal, the parties do not dispute the standard for establishing the right to enforce a promissory note. As the Bankruptcy Court observed, the Bankruptcy Code does not specify the requirements for enforcing a promissory note. (Doc. 2-21 at 4.) "In the absence of specific requirements in the Code, bankruptcy courts look to applicable nonbankruptcy law, usually state law." (*Id.*)

---

[2] The Montys did file a "Statement of Disputed Facts," but it consisted only of a list of issues with no citations to any evidence. (*See* Doc. 2-12 at 9.)

4

Vermont's version of the Uniform Commercial Code (UCC) applies to instruments like promissory notes, and describes a "[p]erson entitled to enforce" an instrument in pertinent part as "the holder of the instrument." 9A V.S.A. § 3-301. A "holder" is defined in relevant part as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* § 1-201(21)(A). As the Bankruptcy Court summarized: "In the context of bankruptcy, a party must demonstrate it was a holder on the date of the bankruptcy petition in order to be entitled to file a proof of claim alleging a secured claim in real property . . . ." (Doc. 2-21 at 4.)[3]

### III. The Montys' Evidentiary Challenge

On appeal, the Montys argue that the Bankruptcy Court "erred when it relied on Defendant's Affidavit, without more, to grant Defendants' Motion for Summary Judgment and determine that the Note was in possession of claimant on the date the petition was filed [December 30, 2011] and that it had, in fact, been indorsed on the date the petition was filed." (*See* Doc. 3 at 8.) The Montys acknowledge that Defendants supplied the affidavits of SPS document control officers asserting that the Montys' loan was deposited into the Trust.[4] And on the issue of whether the Note was indorsed prior to the December 30, 2011 petition, the Montys acknowledge that Ms. Johnstone states in her January 9, 2015 affidavit that she had reviewed the loan records for the Monty Loan (including a "Bank of America Home Loan Instance Summary"), which showed "that the original indorsed note was transferred to the custody of Bank of New York Mellon f/k/a JP Morgan Chase on April 17, 2006 as the document custodian for the Trust." (Doc. 2-17 at 15, ¶¶ 10–11.) But the Montys maintain that those statements in the affidavits fail to comply with Federal Rule of Evidence 803(6) and 902(11). (Doc. 3 at 8.)

Appellees argue that the Montys waived their evidentiary challenge because they neglected to raise it before the Bankruptcy Court. (Doc. 4 at 8.) When reviewing a Bankruptcy

---

[3] A party filing a proof of claim can also base its "holder" status on a post-petition transfer, in which case a different showing is required. (*See id.*) The Bankruptcy Court did not perceive either party to be arguing any post-petition transfer (*id.* at 4 n.1), nor does it appear to be an issue on appeal.

[4] Both SPS affiants asserted that "[t]he Monty loan was among the loans sold by Countrywide" and that "[t]he Monty loan was among the loans deposited into the trust." (Doc. 2-11 at 16, ¶¶ 6, 8; Doc. 2-17 at 14, ¶¶ 6, 8.) Ms. Johnstone also specifically asserted that "[t]he business records I reviewed, including the Instance Summary and related documents, show that physical custody of the Note was in the possession of Bank of New York Mellon, as the document custodian for the Trust, on December 30, 2011 when the Bankruptcy Petition was filed." (Doc. 2-17 at 16, ¶ 14.)

5

Court decision, the District Court need not address issues not raised before the Bankruptcy Court. *First Brandon Nat'l Bank v. Kerwin-White*, 109 B.R. 626, 629 (D. Vt. 1990); *see also In re Legacy Healthcare, LLC*, 447 F. App'x 236, 241 (2d Cir. 2011) (issue not meaningfully presented to the bankruptcy court on summary judgment was not preserved for appellate review). Here, the Montys did not raise their evidentiary challenge in the Bankruptcy Court; accordingly it is unpreserved for review.

Even if the court were to consider the evidentiary challenge, it would fail. As noted above, "where a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso*, 691 F.3d at 230 (quoting Fed. R. Civ. P. 56(c)(4)). The court concludes that the affidavits produced by Defendants met those requirements for the SPS affiants' assertions that the loan was deposited into the Trust, and that the Note was indorsed prior to the December 30, 2011 petition.

Both SPS affiants' statements were made based on their review of "business records." (Doc. 2-11 at 15, ¶ 1; Doc. 2-17 at 13, ¶ 1.) Those records contain hearsay, but Federal Rule of Evidence 803(6) provides an exception to the hearsay rule for:

> A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

The purpose of the business-records exception "is to ensure that documents were not created for 'personal purpose[s] . . . or in anticipation of any litigation' so that the creator of the document 'had no motive to falsify the record in question." *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (alteration and omission in original) (quoting *United States v. Freidin*, 849 F.2d 716, 719 (2d Cir. 1988)). Rule 803(6) "favors the admission of evidence rather than its

exclusion if it has any probative value at all." *Id.* (quoting *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000)).[5]

The Montys assert that the SPS affiants are not qualified under Rule 803(6) because they are not the custodians of the documents maintained by Bank of America, nor are they employees of either Countrywide or Bank of America. (*See* Doc. 3 at 8.) It is true that there is no evidence that the SPS affiants or their employer were ever physically in custody of the original Note—the document custodian was at all relevant times Bank of New York Mellon. Neither is there any evidence that the SPS affiants are employees of any entity other than SPS, which is a servicer and not the document custodian or the trustee. However, such evidence is not necessary for the SPS affiants to be qualified under Rule 803(6).

"[U]nder Rule 803(6) business records are admissible if witnesses testify that the records are integrated into a company's records and relied upon in its day-to-day operations." *In re Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981). Thus it is immaterial that the documents referred to and relied upon by the SPS affiants were not actually produced by or in the presence of SPS or its agents. *See United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) ("'The custodian need not have personal knowledge of the actual creation of the document' to lay a proper foundation." (quoting *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995))). Here, the SPS affiants stated that their job duties included "reviewing company business records" and that they obtained personal knowledge for their statements based upon their review of those records. (Doc. 2-11 at 15, ¶ 1; Doc. 2-17 at 13, ¶ 1.) Thus there was evidence that SPS had integrated records regarding the Monty loan into SPS's records, and that SPS relied upon those records in its operations.

Other courts have reached similar conclusions. *See Cline v. Deutsche Bank Nat'l Trust Co.*, Civil Action No. 3:14-CV-1565-D, 2015 WL 4041791, at *4 (N.D. Tex. July 2, 2015) (requirements of Rule 803(6) were satisfied where there was no showing of lack of trustworthiness and where testimony showed that loan records—including documents obtained from prior servicers—were integrated into SPS's records and relied upon by SPS); *Foregger v.*

---

[5] Rule 803(6) is "designed to work in tandem" with Rule 902(11). *United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014). "Rule 902(11) was added to create 'a procedure by which parties can authenticate certain records of regularly conducted activity, other than through the testimony of a foundation witness.'" *Id.* (quoting Fed. R. Evid. 902 advisory committee's note (2000 amendment)). Here, the Montys present no issue of authentication except to the extent that they argue that the business-records exception is not met.

7

*Residential Credit Solutions, Inc.*, Civil Action No. 12-11914-FDS, 2014 WL 1364788, at *5 (D. Mass. Apr. 4, 2014) (information in documents that came from prior servicers was integrated into the records of the company that bought a mortgage at a foreclosure sale; thus, where plaintiff made no showing that the records were unreliable or untrustworthy, documents attached to the affidavit of the buyer's vice president were admissible under Rule 803(6)); *Lyon Fin. Servs., Inc. v. Clear Sky MRI & Diagnostic Ctrs., Inc.*, Civil Action No. 05-3084, 2006 WL 2338407, at *4 (E.D. Pa. Aug. 10, 2006) (unnecessary to identify person with firsthand knowledge of transaction documents; employee of servicer responsible for administering leases and loans was qualified under Rule 803(6)).

The cases the Montys cite do not compel a contrary conclusion. *In re McFadden*, 471 B.R. 136 (D.S.C. 2012), actually works against the Montys' position. The court in that case overruled objections regarding the admissibility of records relied upon by a loan servicer's employee, and admitted the records as business records under Rule 803(6). *Id.* at 160–61. The *McFadden* court did describe the employee as a "record custodian" for the servicer, but there was evidence in that case that the term was being used to mean "someone who has access to [the servicer's] records." *Id.* at 159. Nothing in the *McFadden* decision suggests that the court in that case required the affiant to be in physical custody of the original records or have personal knowledge of their actual creation. To the contrary, the court explicitly found admissible even information that was not actually created by the servicer, but was "obtained from previous servicers or mortgagees." *Id.* at 160.

The Montys also rely on *Unifund CCR Partners v. Bonfigli*, No. S1295-08 CnC, 2010 Vt. Super. LEXIS 24 (Vt. Super. Ct. May 5, 2010). That was a credit card collections case in which the defendant, Bonfigli, challenged the admissibility of records introduced at trial by the debt-buyer, Unifund, through Unifund's "custodian of records" Bobby Carnes. *Id.* at *1. Unifund claimed to have purchased Bonfigli's account from Chase Bank USA, and to prove the amounts due, Unifund relied on Carnes's testimony regarding information that Chase sent to Unifund on a disc. Unifund sought the admission of those records as business records. The Superior Court concluded that the Chase data incorporated into Unifund's records were hearsay, and that, absent some independent foundation for admissibility, the data would not satisfy the business-records

8

exception.[6] The court rejected Unifund's argument that the records were sufficiently reliable because Unifund relied upon them for its business, remarking that that "might be sufficient in some businesses," but not in the context of the credit card debt-buying business. *Id.* at *19.

This court concludes that *Bonfigli* is distinguishable because the mortgage-loan business is substantially different from the credit card debt-buying business. The main difference as relevant here is that the participants in the mortgage-loan business transfer their interest in the debt through indorsement of a promissory note. The transfer does not require additional proof of the relationship between the transferor and transferee.[7] In contrast, the credit card debt-buyers do not transfer a negotiable instrument. Instead, they sell lists of accounts pursuant to a bill of sale. Proof of such a transfer may require additional evidence. The cases cited above regarding the admissibility of mortgage documents support this conclusion.

Rule 803(6) only applies if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). The Montys point to a variety of facts that they say undermine trustworthiness. They note that, according to Ms. Johnstone's affidavit, "the original indorsed note was transferred to the custody of Bank of New York Mellon f/k/a JP Morgan Chase on April 17, 2006 as the document custodian for the Trust." (Doc. 2-17 at 15, ¶ 11.) The Montys suggest that since the Note was executed on Tuesday, April 11, 2006, and given a three-day right of rescission, the transfer on Monday, April 17, 2006 was the earliest date that the Note possibly could have been transferred. The court finds nothing unusual about a business transaction happening quickly, especially in the area of mortgage loans.

The Montys also suggest that Ms. Johnstone's statement is questionable because "under the Master Purchase Agreement, the custodian was to be JPMorgan Chase, and the trust did not yet exist." (Doc. 6 at 3.) The March 1, 2006 Master Purchase Agreement did indeed designate JPMorgan Chase Bank as the custodian, but it further defined the custodian as any "successor in interest or assign" of JPMorgan Chase bank, "or such other custodian that may be designated by

---

[6] Ultimately the court in *Bonfigli* did find an independent foundation for admissibility because Unifund had offered evidence of Bonfigli's own copies of billing records corroborating the amount due. *See id.* at *21–22.

[7] The Note itself is non-hearsay under Rule 801(c), since it is a legally operative document. The mortgage-loan business relies on that non-hearsay document, as well as related records concerning when that negotiable instrument was indorsed and when it was delivered.

9

Countrywide from time to time." (Doc. 2-17 at 40.) That language is therefore entirely consistent with Ms. Johnstone's statement that Bank of New York Mellon is formerly known as JP Morgan Chase.

The Montys also question how the Note could have been transferred to a document custodian for the Trust on April 17, 2006 when the Trust was not established until July 1, 2006. At the September 16, 2015 hearing, counsel for Appellees explained that on April 17, 2006, Countrywide and J.P. Morgan Acquisition Corp. were still operating under the Master Mortgage Loan Purchase and Servicing Agreement, and *someone* had to have custody of the Note until it was actually deposited into the Trust. The statement in Ms. Johnstone's affidavit about the Note being transferred to the Trust's custodian on April 17, 2006 probably could have been clearer, but it does not indicate a lack of trustworthiness.

Finally, the Montys note that the record does not include any list (or loan schedule) identifying their particular loan as having been transferred to the Trust. (Doc. 3 at 8.) They assert that "[j]ust because the loan was made during the time period of this agreement, does not prove that the obligation was included in the sale." (Doc. 6 at 3.) In support, the Montys cite *In re Hayes*, 393 B.R. 259 (D. Mass. 2008). At the September 16, 2015 hearing, counsel for Appellees explained that they were never asked to produce the loan schedule in discovery, and that the usual practice is not to make the loan schedules public, in part because of privacy issues. The court agrees that, in light of the affidavits that Appellees did produce, it was unnecessary for them to also produce the loan schedule. *In re Hayes* is distinguishable because the bank failed to submit "*any* evidence" that the mortgage at issue was included in the transaction. 393 B.R. at 268 (emphasis added).

At the September 16, 2015 hearing, counsel for the Montys asserted that there were two other "curious" circumstances in the evidence. First, counsel noted that the record includes an "Assignment of Mortgage" dated January 9, 2012 in which MERS purports to assign to Bank of America, N.A. the Montys' mortgage "*together with the note(s)* and obligations therein described." (Doc. 2-17 at 275 (emphasis added).) However, nothing in the record suggests that MERS ever held the Note, and such "superfluous language does not affect the validity of the transfer of legal title to the mortgaged property." *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 293 n.8 (1st Cir. 2013). Second, along somewhat similar lines, counsel notes that Appellees state in their brief that SPS "possessed the collateral file, *including the original Note.*"

10

(Doc. 4 at 9 (emphasis added).) The court understands from the statements at the September 16 hearing that Appellees mean that SPS, as the servicer, had access to the Note, or could view it using SPS's records system.

In sum, none of the various issues that the Montys refer to are sufficient to undermine confidence in the trustworthiness of the information upon which the SPS affiants relied. The affidavits established the facts necessary to prove authority to enforce the Note—i.e., that the indorsed Note was in U.S. Bank's possession on December 30, 2011. The Montys presented no contrary evidence on summary judgment.

## Conclusion

For the reasons stated above, the Bankruptcy Court's April 16, 2015 Order is AFFIRMED.

Dated at Rutland, in the District of Vermont, this 21 day of October, 2015.

_____
Geoffrey W. Crawford, Judge
United States District Court

11